UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                    :

TRUSTEES OF THE NEW YORK CITY DISTRICT :
COUNCIL OF CARPENTERS PENSION FUND, :
WELFARE FUND, ANNUITY FUND, AND :        21 Civ. 7870 (JPC)
APPRENTICESHIP, JOURNEYMAN RETRAINING, :
EDUCATIONAL AND INDUSTRY FUND *et al.*, :       OPINION AND ORDER
                                    :

                  Petitioners,        :

               :

           -v-                  :

               :

CEI CONTRACTORS INC., :

               :

                  Respondent.      :

               :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       Petitioners Trustees of the New York City District Council of Carpenters Pension Fund,

Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and

Industry Fund; Trustees of the New York City Carpenters Relief and Charity Fund; the Carpenter

Contractor Alliance of Metropolitan New York; and the New York City District Council of

Carpenters have petitioned to confirm an arbitration award issued against Respondent CEI

Contractors Inc. (the "Petition").  Petitioners also seek to recover the attorneys' fees and costs that

they have incurred in bringing this Petition to confirm that award.  The Petition is unopposed, as

Respondent did not appear at the underlying arbitration hearing and has not appeared before this

Court.  For the reasons below, the Petition is granted, but with a reduction in Petitioners' request

for attorneys' fees.

### I. Background

**A. Facts**

Petitioners brought this action under section 301 of the Labor Management Relations Act of 1947 ("LMRA"), *as amended*, 29 U.S.C. § 185, to confirm and enforce an arbitrator's award (the "Award") rendered under a collective bargaining agreement involving Petitioner the New York City District Council of Carpenters (the "Union") and Respondent CEI Contractors Inc. Dkt. 1 ("Pet.") ¶ 1. Petitioners Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated under the Employee Retirement Income Security Act of 1974 ("ERISA"). *Id.* ¶ 4. Petitioners Trustees of the New York City District Council of Carpenters Relief and Charity Fund (the "Charity Fund") are trustees of a charitable organization established under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). *Id.* ¶ 5. Petitioner Carpenter Contractor Alliance of Metropolitan New York (collectively with the ERISA Funds and the Charity Fund, the "Funds") is a not-for-profit corporation. *Id.* ¶ 6. The Union is a labor organization and the certified bargaining representative for certain employees of Respondent. *Id.* ¶ 7.

Since around August 14, 2013, Respondent has been a member of the Association of Wall-Ceiling & Carpentry Industries of New York, Inc. ("WCC"). *Id.* ¶ 9, Exh. A ("WCC Letter"). As a member of the WCC, Respondent became bound by the July 1, 2011 through June 30, 2017 CBA between the WCC and the Union. *Id.* ¶¶ 10-15, Exh. B ("CBA").[1] The CBA requires that

---

[1] The WCC and the Union adopted a successor agreement covering the period of July 1, 2017 through June 30, 2024. Pet. ¶ 13, Exh. C ("Successor CBA"). For purposes of this Opinion

Respondent send contributions to the Funds for all work performed by its employees within the trade and geographical jurisdiction of the CBA.  CBA, Art. XVI § 1; Pet. ¶ 16.  It also requires that Respondent makes its books and payroll records available for an audit—to allow the Funds to ensure that Respondent is making the necessary benefit fund contributions under the CBA.  CBA, Art. XVI § 1(a); Pet. ¶ 17.

Besides those requirements, the CBA mandates that Respondent complies with the Funds' Collection Policy.  CBA Art. XVI § 6; Pet. ¶¶ 18-19; *see id.*, Exh. E ("Collection Policy").  Under the Collection Policy, "[i]n the event that an employer refuses to permit a[n] . . . audit upon request[,] . . . the Fund Office shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours reported per week for any period of four consecutive weeks during the audit period."  Collection Policy § IV(12).

Petitioners requested an audit of Respondent's files from December 28, 2017 through the present to determine whether Respondent had paid the proper contributions.  Pet. ¶ 25.  Respondent refused, however, to provide its books and records for the audit.  *Id.* ¶¶ 26-27.  Under the CBA, "[s]hould any dispute or disagreement arise between the parties hereto . . . concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator."  CBA Art. XVI § 12.  The CBA and the Collection Policy also provide that, should the Funds have to arbitrate a dispute or sue for unpaid contributions, the Funds have a right to collect:  (1) the delinquent contributions; (2) interest

_____

and Order, there are no meaningful substantive differences between the CBA and the Successor CBA.  For clarity purposes, the Court will refer herein only to the CBA unless it is necessary to cite the Successor CBA.

on the unpaid contributions at the prime rate of Citibank plus 2%; (3) liquidated damages in the amount of 20% of the unpaid contributions or interest on the unpaid contributions, whichever is greater; (4) reasonable costs and attorneys' fees incurred by the Funds in collecting the delinquencies; and (5) other legal or equitable relief that the Court deems appropriate.  CBA Art. XVI § 11(a); Collection Policy § V; Pet. ¶ 22.

To comply with the CBA, Petitioners began arbitration before Roger E. Maher.  Pet. ¶ 28. Arbitrator Maher held a hearing on April 8, 2021.  *See id.*, Exh. G ("Award") at 1.  Respondent was notified of the proceeding and the claims against it.  *Id.* ¶ 28, Exh. F; *see* Award at 1.  But Respondent did not appear or request an adjournment.  *See* Award at 1-2.  Arbitrator Maher examined the evidence and rendered the Award on April 10, 2021.  *Id.* at 1-3.  Arbitrator Maher found that Respondent violated the CBA when it failed to permit the Funds to audit its books and records and ordered Respondent to pay the Funds $366,255.78, consisting of (1) an estimated principal deficiency of $277,510.13; (2) interest of $30,343.62; (3) liquidated damages of $55,502.03; (4) court costs of $400; (5) attorneys' fees of $1,500; and (6) arbitrator's fees of $1,000.  *Id.* at 3.  The arbitrator also found that interest at the rate of 5.25% would accrue on the Award from when he issued it.  *Id.*  Arbitrator Maher sent the Award to Respondent via certified mail.  *Id.* at 4.  As of the date of the filing of the Petition, Respondent has paid no portion of the Award.  Pet. ¶ 32.

**B.  Procedural Background**

On September 21, 2021, Petitioners filed the Petition to confirm the Award.  Dkt. 1. According to the docket, Petitioners served Respondent with the Petition on September 23, 2021, *see* Dkt. 9, and again on October 21, 2021 via electronic and overnight mail, *see* Dkt. 10. Respondent has not submitted an opposition or otherwise appeared in this action.

## II.  Discussion

### A.  The Arbitration Award

#### 1.  Applicable Law

"The LMRA establishes a federal policy of promoting industrial stabilization through the collective bargaining agreement, with particular emphasis on private arbitration of grievances." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quotations omitted).  "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court," and "[o]nly a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quotations omitted).

As a result, judicial review of an arbitration award is "limited to determining whether the arbitration proceedings and award met the minimum legal standards established by" the LMRA. *Nat'l Football League Mgmt. Council*, 820 F.3d at 532.  The Court "must simply ensure that the arbitrator was even arguably construing or applying the contract and acting within the scope of his authority and did not ignore the plain language of the contract." *Id.* (quotations omitted).  Under this standard, "even if an arbitrator makes mistakes of fact or law, [a district court] may not disturb an award so long as [the arbitrator] acted within the bounds of his bargained-for authority." *Id.*  In other words, "[a]s long as the award draws its essence from the collective bargaining agreement and is not merely the arbitrator's own brand of industrial justice, it must be confirmed." *Id.* at 537 (quotations omitted).

If, as here, a petition to confirm an arbitration award is unopposed, courts generally treat the petition "as akin to a motion for summary judgment." *D.H. Blair & Co.*, 462 F.3d at 109. Although the Court grants significant deference to the arbitrator's decision, an unopposed

confirmation petition must "fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Id.* at 110 (quotations omitted).

### 2. Analysis

Petitioners have adequately shown that there is no genuine issue of material fact precluding judgment in their favor confirming the Award. Arbitrator Maher found that Respondent was bound by the CBA, which requires Respondent to submit its books and payroll records to the Funds for an audit to allow the Funds to confirm that Respondent has made its required contributions. Award at 2; *see* CBA Art. XVI § 1(a). The CBA also provides for arbitration if a dispute occurs. CBA Art. XVI § 12. Arbitrator Maher found that Respondent had "legally sufficient notice" of the arbitration proceeding yet failed to attend. Award at 1-2. Before issuing the Award, Arbitrator Maher considered the "uncontroverted testimony" and "substantial and credible evidence," and concluded that Respondent has failed to make its books and records available, as required by the CBA. *Id.* at 2; *see also* Pet. ¶ 30. These findings by Arbitrator Maher adhered to the terms of the CBA and were well within the bounds of his authority.

The Court also finds, based on the undisputed evidence, that the Award is proper. As noted above, the CBA and the Collection Policy provide that, should the Funds have to arbitrate a dispute or sue over unpaid contributions, the Funds may collect, along with the delinquent contributions: (1) interest on the unpaid contributions at the prime rate of Citibank plus 2%; (2) liquidated damages for 20% of the unpaid contributions or interest on the unpaid contributions, whichever is greater; and (3) reasonable attorneys' fees and costs incurred by the Funds in collecting the delinquencies. CBA Art. XVI § 11(a); Collection Policy § V; *see* Pet. ¶ 22. In deciding the Award, Arbitrator Maher received in evidence a summary report of the estimated deficiency in contributions. *See* Award at 2. "Although Petitioners have not presented this Court with copies of all the materials on which the arbitrator relied, there is no reason to doubt the arbitrator's

6

interpretation of those materials." *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Earth Constr. Corp.*, No. 21 Civ. 1443 (JPC), 2021 WL 4975690, at *3 (S.D.N.Y. Oct. 25, 2021) (quotations omitted).  Moreover, "nothing suggests that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law." *Id.* (quotations omitted).  The Court therefore confirms Petitioners' timely application for confirmation of the Award.

**B.  Petitioners' Application for Attorneys' Fees, Costs, and Post-Judgment Interest**

**1.  Applicable Law**

Petitioners have also requested $812.50 in attorneys' fees and $77 in costs arising out of their efforts in bringing this action to confirm the Award.  Pet. ¶¶ 42, 43; Dkt. 5 ("Pet. Memorandum") at 6-7.  Generally, "in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award," which section 301 of the LMRA does not provide.  *Int'l Chem. Workers Union, Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985) (citations omitted).  But a court may award attorneys' fees "[p]ursuant to its inherent equitable powers . . . when the opposing counsel acts in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (quotations omitted).  "[W]hen a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded." *Id.* (quotations omitted).

In determining whether a requested fee is reasonable, courts look to the total hours billed and the rates at which those hours were billed.  "A reasonable hourly rate is what a reasonable, paying client would be willing to pay." *N.Y.C. & Vicinity Dist. Council of Carpenters v. Plaza Constr. Grp., Inc.*, No. 16 Civ. 1115 (GHW), 2016 WL 3951187, at *2 (S.D.N.Y. July 19, 2016) (quotations omitted).  An attorney's hourly rate is considered reasonable when it is "in line with

those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

To allow the Court to determine whether time was reasonably expended, "[a]pplications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). These applications should exclude "[h]ours that are excessive, redundant, or otherwise unnecessary." *Id.* (quotations omitted).

### 2. Analysis

Respondent has failed to appear or defend this action and has not justified its failure to abide by the arbitrator's decision. *See N.Y.C. Dist. Council of Carpenters Pension Fund v. Angel Const. Grp., LLC*, No. 08 Civ. 9061 (RJS), 2009 WL 256009, at *3 (S.D.N.Y. Feb. 3, 2009) ("Here, Defendant has failed to appear or in any way defend this confirmation action, and thus it is axiomatic that Defendant has offered no justification for its failure to abide by the Award."). And the CBA provides that in the event that the Funds initiate judicial proceedings to collect delinquent contributions, and prevail in that litigation, the employer shall pay reasonable attorneys' fees and costs. *See* CBA Art. XVI § 11(a)(4); Successor CBA Art. XVII § 10(a)(4). The Collection Policy similarly provides that attorneys' fees shall be assessed against a delinquent employer to cover time spent by counsel "in collection efforts or in enforcing the Board of Trustees' rights to payroll reviews and/or audits." Collection Policy § V(6). Thus, the Court holds that an award of fees and costs is proper in this case.

In support of their application for fees, Petitioners have provided an invoice reflecting 0.2 hours of partner time, billed at a rate of $350 per hour, and 2.7 hours of associate time, billed at

$275 per hour.  Pet., Exh. H ("Billing History"); *see* Pet. ¶¶ 37-42.[2]  After reviewing Petitioners'

counsel's time records, the Court first finds these 2.9 hours spent on this case to be reasonable and

not duplicative.

The Court next turns to the requested hourly rates. The 0.2 hours of partner time is

attributed to Nicole Marimon, a 2014 graduate of Fordham University School of Law, who attests

that she "has regularly served as lead counsel for multiemployer benefit plans in ERISA litigation."

Pet. ¶ 39.  Over the course of last year, "Ms. Marimon has sought and been awarded fees at a rate

between $275 to $300 per hour by courts in this Circuit." *Earth Constr. Corp.*, 2021 WL 4975690,

at *4 (quotations omitted).  "In many cases in which Ms. Marimon has sought a rate of $350, courts

have reduced her rate to between $300 and $325." *Id.*; *see, e.g.*, *Trs. of the N.Y.C. Dist. Council*

*of Carpenters Pension Fund v. Land Cruising Props. Inc.*, No. 21 Civ. 7877 (KPF), 2022 WL

1125623, at *6 (S.D.N.Y. Apr. 15, 2022) (awarding Ms. Marimon fees at a rate of $325 per hour);

*Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Inniss Constr. Inc.*, No. 21 Civ.

4582 (KPF), 2021 WL 4868589, at *7 (S.D.N.Y. Oct. 18, 2021) (same); *Trs. of the N.Y.C. Dist.*

*Council of Carpenters Pension Fund v. JB Squared Constr. Corp.*, No. 20 Civ. 2659 (KPF), 2020

WL 6825693, at *6 (S.D.N.Y. Nov. 19, 2020) (same). In agreement with these cases, the Court

reduces Ms. Marimon's rate to $325 per hour for this case.

The 2.7 hours of associate attorney time is attributed to Adrianna R. Grancio, a 2016

graduate of St. John's University School of Law, who attests that her "primary practice area is

ERISA litigation."  Pet. ¶ 38.  Over the past couple of years, several other courts have set Ms.

Grancio's hourly rates in similar matters at $225 and $250 per hour. *Compare Land Cruising*

---

[2] The Petition claims that the firm "billed the legal assistants' time at a rate of $120 per
hour for work performed in connection with this action."  Pet. ¶ 40.  But there are no legal assistant
entries in the Billing History.  The Court therefore does not opine on the legal assistants' rates.

*Props. Inc.*, 2022 WL 1125623, at *6 (awarding Ms. Grancio fees at a rate of $250 per hour), *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Innovation Designs Inc.*, No. 21 Civ. 2801 (KPF), 2021 WL 4869951, at *7 (S.D.N.Y. Oct. 18, 2021) (same), *and Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Three Guys Floor Covering Workroom Inc.*, No. 21 Civ. 910 (KPF), 2021 WL 4873152, at *7 (S.D.N.Y. Oct. 18, 2021) (same), *with Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Piccini MNM, Inc.*, No. 19 Civ. 5258 (RA), 2021 WL 1791591, at *4 (S.D.N.Y. May 5, 2021) (awarding Ms. Grancio fees at a rate of $225 per hour), *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Eclipse Constr. Servs. Inc.*, No. 21 Civ. 7868 (GHW), 2021 WL 5567752, at *6 (S.D.N.Y. Nov. 26, 2021) (same), *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Ocean Marine Dev. Corp.*, No. 19 Civ. 6164 (RA), 2020 WL 4274224, at *5 (S.D.N.Y. July 23, 2020) (same), *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Duncan Partners, LLC*, No. 19 Civ. 8120 (RA), 2020 WL 4208368, at *7 (S.D.N.Y. July 22, 2020) (same), *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Triangle Enter. NYC, Inc.*, No 20 Civ. 793 (RA), 2020 WL 2306484, at *6 (S.D.N.Y. May 8, 2020) (same), *and Trs. of the N.E. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Coop. Funds v. Tiki Indus., Inc.*, No. 19 Civ. 3295 (SJF) (ARL), 2021 WL 242266, at *5-6 (E.D.N.Y. Jan. 25, 2021) (same).  To account for Ms. Grancio's additional experience since the decisions awarding her an hourly rate of $225, as well as to factor in inflation, the Court reduces Ms. Grancio's rate to $250 per hour for this case.

Thus, Petitioners' request for attorneys' fees is granted, but at the hourly rates determined above.  Petitioners are therefore entitled to $740.00 in attorneys' fees.  The Court also grants Petitioners $77 in costs, near a standard cost to bring actions in this District.  *See Earth Constr.*

*Corp.*, 2021 WL 4975690, at *5.  Lastly, the Court awards post-judgment interest "from the date of the entry of the judgment."  28 U.S.C. § 1961(a).

### III.  Conclusion

For the reasons above, the Petition is granted.  The Clerk of the Court is respectfully directed to enter judgment of $367,072.78, which consists of the arbitration award of $366,255.78, attorneys' fees of $740.00, and costs in the amount of $77.  The Court also awards interest at a rate of 5.25% on the arbitration award from the date of that award, April 10, 2021, *see* Award at 3, through the date of the judgment.  Post-judgment interest will accrue at the statutory rate.  The Clerk of the Court is also respectfully directed to close this case and to enter judgment.

SO ORDERED.

Dated: August 10, 2022
       New York, New York

_____
JOHN P. CRONAN
United States District Judge